CONTEL CONSTRUCTION
CORPORATION

v.

Jerome E. PARKER, Regional Director of Community Facilities, Department of Housing and Urban Development, Widener Building, Philadelphia, Pennsylvania

and

Sidney Hillman Medical Center—Apartments for the Elderly, Inc.

Civ. A. No. 41605.

United States District Court
E. D. Pennsylvania.

Dec. 15, 1966.

Jay D. Barsky, Silver & Barsky, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty. for Eastern District of Pennsylvania, James C. Lightfoot, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

FULLAM, District Judge.

Plaintiff seeks to restrain the corporate defendant from awarding a contract for the construction of an apartment project, and also to restrain the defendant administrative official from carrying out arrangements to finance the project pursuant to Section 1701q of the Housing Act of 1959, Public Law 86–372, 12 U.S.C. § 1701q. Plaintiff is a disappointed bidder on the same project.

The complaint was filed November 23, 1966, accompanied by an application for a temporary restraining order. After lengthy conference with counsel, the application for a temporary restraining order was denied. Thereafter, plaintiff made formal application for the issuance of a preliminary injunction, and the case was scheduled for hearing on December 2, 1966. The defendants filed a motion to dismiss. At the hearing, plaintiff was permitted, over objections of the defendants, to amend the complaint so as to allege taxpayer status. There being no dispute as to the essential facts, no testimony was taken. After argument, we entered an order granting the defense motion to dismiss, and now state our reasons.

Under the statute cited above, the Department of Housing and Urban Development (hereinafter "HUD") is authorized to grant loans, inter alia, for the construction of housing for the elderly or handicapped. The only pertinent statutory limitation is the provision in subsection (a) (2) (B) of § 1701q that

"* * * no such loan shall be made unless the Administrator finds that the construction will be undertaken in an economical manner and that it will not be of elaborate or extravagant design or materials * * *."

In practice, HUD requires the local sponsor of such projects to advertise for bids and to award the contract only to the lowest responsible bidder. The bid forms and related documents are prepared by, or at least subject to the approval of, HUD.

In the present case, the local sponsor, the defendant, Sidney Hillman Medical Center—Apartments for the Elderly, Inc. (hereinafter sometimes called "Spon-

sor") duly advertised for bids and nine bids were submitted. Each bidder was required to submit a "base bid" covering the entire project, and then to specify the amount which the bidder would be willing to deduct from that bid in the event of the omission of certain specified alternates. When the bids were opened, the plaintiff proved to be the low bidder on the base bid, and also on the alternates which had been sought at that time. However, all of the bids were in excess of the funds available for the project, and all of the bidders were so notified, and were requested to, and did, agree to keep their bids in effect for an extended period. Thereafter, after full and open discussions with the various bidders, and between the various bidders and Sponsor's architects, further modifications in the plans and specifications were made by the architects, and a "fourth alternate" was prepared and submitted to the bidders. Each was invited to submit a further sealed bid specifying the amount which the bidder would be willing to deduct by reason of the changes represented by this alternate proposal.

Only four of the original group of nine bidders submitted bids on this fourth alternate. Plaintiff, whose original bid had been about $68,000 lower than its nearest rival, agreed that it would be willing to deduct an additional $100,810 by reason of alternate number four; however, its nearest rival, Carnell Construction Corporation, submitted a bid offering to deduct $195,000 by reason of alternate number four. Thus, the final outcome of all of the bidding was that Carnell Construction Corporation's bid for the entire project, as modified, was approximately $27,000 lower than plaintiff's bid.

■ Plaintiff now claims that it was improper for HUD to permit the Sponsor to receive bids on alternate number four after the conclusion of the original bidding. As a general proposition, this argument would no doubt be sound, as applied to the construction of

public buildings by the government or an agency thereof. 10 Opin.Compt.Gen. 501 (1931). But this is not a public project, and there is no statutory requirement of public bidding, but merely an agreement between the Sponsor and HUD that public bids would be invited. On August 20, 1964, the Comptroller General issued an opinion holding that, under similar circumstances, the agency had the right to waive its requirements as to competitive bidding. Therefore, even if the irregularity complained of should be considered sufficiently serious as not to constitute competitive bidding at all, HUD had the right to waive the irregularity.

■ Moreover, the procedure here followed does not amount to a substantial departure from the competitive bidding plan. The effect of the decision to rebid on the basis of a fourth alternate was to obtain a rebidding of the entire project from those contractors who had initially submitted bids. It seems rather unlikely that rebidding the entire project by public advertisement would have resulted in the receipt of bids from outsiders under the circumstances. At any rate, the Administrator could properly find that, under a contract with Carnell at the price thus determined, "the construction will be undertaken in an economical manner * * *."

■ Finally, it is quite clear that plaintiff's real complaint is not that the subsequent alternate-bid procedure was illegal or improper, but rather that it turned out unfavorably. Having been a willing and even eager participant in the rebidding, plaintiff cannot now be heard to say that its consequences should be enjoined. We consider plaintiff's present action barred by the doctrines of laches and clean hands.

■ Of course, as a mere disappointed bidder, plaintiff had no standing whatever. Edelman v. Federal Housing Administration, 251 F.Supp. 715, 719 (E.D. N.Y.1966); cf. Friend v. Lee, 95 U.S. App.D.C. 224, 221 F.2d 96 (1955); United States ex rel. Brookfield Construc-

tion Co. v. Stewart, 234 F.Supp. 94 (D.D.C.), aff'd per curiam 119 U.S.App. D.C. 254, 339 F.2d 753 (1964). However, the case has been argued on the assumption that plaintiff would have sufficient standing as a taxpayer to maintain this action; and, although the propriety of permitting plaintiff to amend the complaint in this regard at the hearing is open to question, we prefer to dispose of the case on the merits, rather than on any question of standing.

For the foregoing reasons, we entered an order of dismissal at the close of the hearing.